IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

JAMES DOUGLAS BRIGHAM,    )
    )
    Plaintiff,    )
    )
    v.    )    Civil Action No. 1:06CV00958
    )
OFFICE OF WORKERS'    )
  COMPENSATION PROGRAMS, et al.,    )
    )
    Defendants.    )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS

### Introduction

This motion to dismiss presents a single question of statutory construction. Plaintiff, James Brigham, seeks reversal of a final decision by the Department of Labor ("DOL") that denied him benefits under the Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA" or "Act"), 42 U.S.C. § 7384 et seq. DOL denied plaintiff's claim on the grounds that plaintiff was not a "covered beryllium employee" within the meaning of 42 U.S.C. § 7384l(7), and its associated regulation, because he was not employed by a beryllium vendor at a time when it was producing or processing beryllium for the Department of Energy ("DOE"), or when a beryllium vendor facility was undergoing remediation undertaken pursuant to a contract between such a vendor and DOE. Because DOL by regulation has adopted a "permissible" construction of what actions are "related to the production and processing of

1

beryllium," 42 U.S.C. § 7384l(7)(c), its interpretation is entitled to deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984), and should be sustained.  Consequently, because plaintiff's claim is barred by that regulation, his complaint should be dismissed pursuant to Fed. R. Civil P. 12(b)(6).

**STATUTORY AND REGULATORY BACKGROUND**

**1.  Eligibility of "covered beryllium employees" under EEOICPA**

Part B of EEOICPA establishes a compensation program for covered employees (or their survivors) that have sustained illnesses designated under the Act due to their exposure to radiation, beryllium, or silica in the performance of duty at DOE facilities or the facilities of certain specified DOE contractors, subcontractors, and designated beryllium vendors.  The program provides a uniform lump-sum award of $150,000, 42 U.S.C. § 7384s(a), and the payment of medical benefits for care associated with the illness, 42 U.S.C. § 7384s(b).  The illnesses compensable under Part B of the Act include "covered beryllium illnesses," which include "established chronic beryllium disease" as defined in 42 U.S.C. § 7384l(8)(B).

Of central relevance to this case, the employee or former employee of a beryllium vendor must also be a "covered beryllium employee" as that phrase is defined in the Act, 42 U.S.C. § 7384l(7), which includes "[a] current or former employee of a beryllium vendor . . . during a period when the vendor was engaged in activities related to the production or processing of beryllium for sale to, or use by, the Department of Energy."  Id. § 7384l(7)(c).  In order to address the interstices in the statutory definition, DOL promulgated a regulation last year which is directly relevant to plaintiff's claim.  See 20 C.F.R. § 30.205 ("What are the criteria for eligibility for benefits relating to beryllium illnesses covered under Part B of EEOICPA").  In

relevant part, that regulation applies to provide for the eligibility of

> . . . a current or former civilian employee of . . . (iii) A beryllium vendor, or of a contractor or subcontractor of a beryllium vendor, during a period when the vendor was engaged in activities related to the production or processing of beryllium for sale to, or use by, the DOE, <u>including periods during which environmental remediation of a vendor's facility was undertaken pursuant to a contract between the vendor and DOE</u>; (emphasis added)

20 C.F.R. § 30.205(a)(2)(iii).

### 2.     The Administrative Application Process under EEOICPA

The President assigned to DOL the primary responsibility for administering the compensation program under Part B.  <u>See</u> Executive Order 13179, 65 Fed. Reg. 77487 (December 11, 2000).  An individual asserts his entitlement to benefits under EEOICPA by filing a claim with DOL's Office of Workers' Compensation Programs ("OWCP").  <u>See</u> 20 C.F.R. §§ 30.100 and 30.101 (2005).  After reviewing the factual and medical evidence of record and the results of such investigation as it may deem necessary[1], one of OWCP's four district offices will issue a recommended decision on the claim containing findings of fact and conclusions of law. 20 C.F.R. §§ 30.300, 30.305, and 30.306.

At the same time that it issues a recommended decision on the claim, the district office forwards the record of such claim to the Final Adjudication Branch ("FAB") of the OWCP.  20 C.F.R. § 30.307(b).  Within 60 days of the date that the district office issues the recommended decision, the claimant must object to any of the findings of fact and/or conclusions of law contained in the recommended decision to trigger either a hearing (upon specific request) or a

---

[1] In certain cases not relevant to this litigation, the Department of Health and Human Services' National Institute for Occupational Safety and Health may be required to estimate a worker's radiation exposure at a covered facility.

review of the written record by the FAB.  20 C.F.R. §§ 30.310(a) and 30.312.  As part of the

hearing process or review of the written record by the FAB, the FAB reviewer considers the

written record forwarded by the district office, any additional evidence and/or argument

submitted by the claimant, and may also conduct whatever investigation is deemed necessary.  20

C.F.R. §§ 30.313(a) and 30.314(a).  At any time before the issuance of its final decision, the FAB

may return the claim to the district office for further development without issuing a final

decision.  20 C.F.R. § 30.317.

Absent withdrawal or abandonment of a claim, the FAB will issue a final agency decision

in every case. 20 C.F.R. § 30.316.  If the claimant objected to all or part of the recommended

decision, the FAB will issue a final decision on the claim at the conclusion of either the hearing

or review of the written record.  20 C.F.R § 30.316(b).  The decision of the FAB will be "final"

upon the date of issuance of such decision unless the claimant files a request for reconsideration

within 30 days from such date.  20 C.F.R. §§ 30.316(d) and 30.319(a).  If the FAB grants the

request for reconsideration, it will consider the written record of the claim again and issue a new

final decision on the claim.  20 C.F.R. § 30.319(c).  If the claimant's timely request for

reconsideration is denied by the FAB, the underlying decision of the FAB will be considered to

be "final" on the date the request is denied.  20 C.F.R. § 30.319(c).

**FACTUAL AND PROCEDURAL BACKGROUND**

**1.  Factual Background**

The Coors Porcelain facility in Golden, Colorado produced beryllium under contract with the Atomic Energy Commission, a predecessor agency of the Department of Energy[2], from 1947 to 1975.  Complaint ("Compl.) ¶ 12.  An employee of that facility during that time period would be a "covered beryllium employee," since he or she was employed during a time period when the employer was engaged in activities "related to" the production of beryllium for sale to DOE.  Brigham, however, was an employee of Coors Porcelain from 1983 to 1995, after its beryllium production contract with DOE had ended.  Compl. ¶ 12.  In 1985, Coors Porcelain entered into a contract with Morrison-Knudsen Engineers to decontaminate and raze Building 16 at the facility where residue of beryllium oxide was found.  Compl. ¶ 13.  Critically, however, DOE was not a party to this remediation contract.

Paragraph 13 of plaintiff's Complaint does not identify the entity with which Coors Porcelain contracted with to conduct the remediation efforts, however the September 28, 2005 Findings of Fact made by OWCP's Denver district office in plaintiffs' second administrative claim included the following:

> 4.  Coors Porcelain contracted with Morrison-Knudsen Engineers in 1985 for cleanup of Beryllium Oxide that was used from 1970 to 1975 in the company's ceramic manufacturing processes. Department of Energy was not a party or had any involvement in the contractual relationship between Coors Porcelain and Morrison-Knudsen Engineers to decontaminate or demolish

---

[2]  For the purpose of EEOICPA, the term "Department of Energy" is defined as including its "predecessor agencies."  *See* 42 U.S.C. § 7384l(10).

Building 16.

Attachment A, hereto, at unnumbered pages 5-6.  Plaintiff's November 18, 2005 appeal of the district office recommendation conceded this factual point, but argued that it was irrelevant to plaintiffs' entitlement to compensation under the Act.  See Attachment B, hereto at 2 ("The fact that such remediation was not conducted under contract with the DOE misses the point and is wholly irrelevant to the issue.").[3]

Plaintiff was diagnosed as having a "covered beryllium illness," Compl. 11, which he alleges (and defendant concedes for purposes of this motion), could only have been caused by his employment at Coors Porcelain during the remediation period.[4]

### 2.  Procedural Background

Brigham filed a Form EE-1 (Claim for Benefits under the EEOICPA) with the Denver district office of the Division of Energy Employees Occupational Illness Compensation of OWCP on February 19, 2002.  On September 12, 2002, the Denver district office issued a recommended decision to deny the claim on the grounds that Brigham was not a "covered beryllium employee" since he was employed at the Coors Porcelain facility outside of the period

---

[3]For purposes of ruling on this motion to dismiss, the Court can consider "documents that, although not incorporated by reference [in the complaint], are 'integral' to the complaint."  Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004), quoting Chambers v. Times Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).  This rule certainly applies where the contents of these documents are not questioned by any party.  Knieval v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).  Such documents may be attached to a defendant's motion to dismiss and be considered when "referred to in the plaintiff's complaint and are central to her claim."  Venture Associates v. Zenith Data Systems, 987 F.2d 429, 431 (7th Cir. 1993).

[4]Brigham worked in Building 16 for six months in 1983 and part of his duties involved clean-up of the building.  It is our understanding that Morrison-Knudsen Engineers steam-cleaned the building, then demolished it and built a parking lot on the site.

during which the facility was operating under a contract with DOE, and, therefore, he was not an employee during a period when the facility was engaged in activities related to the production or processing of beryllium for sale to, or use by, DOE. On February 20, 2003, the FAB in Washington, D.C. issued a final decision which denied the claim on the same grounds it was denied by the district office. On March 27, 2003, Brigham filed a request for reconsideration of the final decision with the FAB; on May 20, 2003, the FAB denied that request. See Compl. ¶ 3.

On February 15, 2005, Brigham filed a civil suit in the District Court for the District of Columbia appealing the final decision on his claim. Compl. ¶ 3, citing Brigham v. OWCP, (D.D.C. No. CV 05-0325). On April 8, 2005, a Director's Order was issued that vacated the February 20, 2003 final decision and reopened Brigham's claim for further development and the issuance of new recommended and final decisions. Compl. ¶ 3. That order specifically directed the Denver district office to decide the question of whether Brigham was a "covered beryllium employee" because he worked at Coors Porcelain during a period of environmental remediation. Following the order vacating the February 20, 2003 final decision, Brigham voluntarily dismissed his lawsuit. Id.

On September 28, 2005, the district office issued a new recommended decision denying him compensation on the grounds that he was not a "covered beryllium employee" under 42 U.S.C. § 7384l(7). The recommended decision found that Brigham was not employed at a beryllium vendor site during a time when the facility was engaged in activities related to production or processing of beryllium for DOE, "including [under the Secretary's regulations] periods during which environmental remediation of a vendor's facility was undertaken pursuant to a contract between the vendor and DOE."

7

On November 25, 2005, Brigham filed objections to the new recommended decision with the FAB and continued to argue that his employment at the Coors Porcelain facility during a period of environmental remediation was related to the production or processing of beryllium for DOE. On April 26, 2006, the FAB issued a new final decision denying Brigham's claim on the grounds that, under the Secretary's implementing regulations, only periods of environmental remediation of a vendor's facility that were undertaken pursuant to a contract between the vendor and DOE are considered related for purposes of meeting the definition of "covered beryllium employee." 20 C.F.R. § 30.205(a)(2)(iii). Plaintiff filed this civil action challenging that final agency action on May 23, 2006.

## ARGUMENT

## I. Standard of Review Under the Administrative Procedure Act

Because Part B of the EEOICPA contains no specific provision for judicial review, the appropriate standard for review of the final agency action[5] at issue here is provided by § 706(2) of the Administrative Procedure Act ("APA"). See Public Citizen v. Federal Aviation Admin., 988 F.2d 186, 196 (D.C. Cir. 1993). A court exercising judicial review under § 706(2)(A) of the APA may not "substitute its judgment" for that of the agency. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413-15 (1971). In reviewing agency action under the APA, the court

---

[5] While the EEOICPA is silent on the matter, its implementing regulations describe when an order is final. See 20 C.F.R. §§ 30.316 and 30.319. These regulations provide that, absent withdrawal or abandonment of a claim, a final agency decision will be issued in every case by the FAB. 20 C.F.R. § 30.316. The FAB decision becomes final either upon the date of its issuance or, if the claimant files a timely request for reconsideration, upon the date that the FAB denies such a request. 20 C.F.R. §§ 30.316(d) and 30.319(c). Thus a final agency action was taken when the FAB issued the second final decision on Plaintiff's administrative claim on April 26, 2006.

does not review questions of law under the "de novo" standard under which they would be reviewed in a non-APA case.  Rather, it has long been settled that just as courts grant a measure of deference to agency policy judgments and factual findings, so too must a court grant a measure of deference to agency interpretations of ambiguous statutes or regulations.  See e.g. Udall v. Tallman, 380 U.S. 1, 16 (1965).

In the seminal case of Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984), the Court re-affirmed this principle in establishing a two-step process of statutory construction in the APA review context.  First, if Congress has directly spoken to the issue in question, the court must of course give effect to Congress' intent.  But if the statute is ambiguous the Court reaffirmed the principle that deference should be accorded to the Agency's construction of its own statute:

> If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.  Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.  (emphasis added)

467 U.S. at 843.  This principle has been consistently followed by the Court since Chevron, see e.g. MCI Telecommunications v. AT&T, 512 U.S. 218, 229 (1994);  See e.g. Rust v. Sullivan, 500 U.S. 173, 186-87 (1991), as well as by the D.C. Circuit, see e.g. American Council on Education v. Federal Communications Comm'n, ___ F.3d ___, 2006 WL 1563742 (D.C. Cir. 2006); Citizens Coal Council v. Norton, 330 F.3d 478, 481-84 (D.C. Cir. 2003).

The Supreme Court has recently articulated the rationale for the Chevron Doctrine as follows:

9

> In <u>Chevron</u>, this court held that ambiguities in statutes within an agency's
> jurisdiction to administer are delegations of authority to the agency to fill the
> statutory gap in reasonable fashion.  Filling these gaps, the Court explained,
> involves difficult policy choices that agencies are better equipped to make than
> courts.  467 U.S. at 865-866.  If a statute is ambiguous, and if the implementing
> agency's construction is reasonable, <u>Chevron</u> requires a federal court to accept the
> agency's construction of the statute, even if the agency's reading differs from
> what the court believes is the best statutory interpretation.  *Id.* at 843-844.

<u>National Cable & Telecommunications Assn. v. Brand X Internet Services</u>, 125 S.Ct. 2688, 2699

(2005).

It is not difficult for an agency to establish that its statutory construction "reflects a

reasonable interpretation of the law."  <u>Holly Farms Corp. v. NLRB</u>, 517 U.S. 392, 409 (1996).

To find an agency's interpretation is permissible, this Court "need not conclude that the agency

construction was the only one it permissibly could have adopted," <u>Rust v. Sullivan</u>, 500 U.S.

173, 184 (1991) (quoting <u>Chevron</u>, 467 U.S. at 843 n. 11); <u>Northpoint Technology v. FCC</u>, 414

F.3d 61, 69 (D.C. Cir. 2005), or that it is "the best interpretation of the statute," <u>United States v.</u>

<u>Haggar Apparel Co.</u>, 526 U.S. 380, 394 (1999) (quoting <u>Atlantic Mutual Insurance Co. v.</u>

<u>Commissioner of Internal Revenue</u>, 523 U.S. 382, 389 (1998)), or that it is "the most natural

one." <u>Pauley v. BethEnergy Mines, Inc.</u>, 501 U.S. 680, 702 (1991).  The agency's view is

deemed to be reasonable so long as it is not "flatly contradicted" by plain language.  <u>Department</u>

<u>of the Treasury v. Federal Labor Relations Authority</u>, 494 U.S. 922, 928 (1990).

Plaintiff, on the other hand, bears a daunting burden in showing that the Secretary's

interpretation of the governing statute is not entitled to deference.  It is not enough for plaintiff to

argue that the words of the statute "support" plaintiff's view, <u>Auer v. Robbins</u>, 519 U.S. 452, 457

(1997), or that plaintiff's interpretation is a "plausible" one, <u>Reno v. Koray</u>, 515 U.S. 50, 62

(1995), or that plaintiffs' view is "consistent with accepted cannons of construction." Pualey v. Beth Energy Mines, 501 U.S. at 702. Rather, plaintiff must show that his reading of the statute is the "inevitable one," Regions Hospital v. Shalala, 522 U.S. 448, 460 (1998), because Congress made a deliberate decision to "compel" the result they urge, Auer, supra, 519 U.S. at 458, in terms so "unambiguously manifest," Babbit v. Sweet Home Chapter of Communities of Great Oregon, 515 U.S. 687, 703 (1995), that the statutory language "cannot bear the interpretation adopted by the Secretary." Sullivan v. Everhart, 494 U.S. 83, 92 (1990). Thus, for plaintiff to prevail his view of the statute must be "the only possible interpretation." Regions Hospital v. Shalala, 522 U.S. at 460; Sullivan, supra, 494 U.S. at 89.

## II.    The Secretary of Labor Has Reasonably Interpreted the Statute to Preclude Compensation Where The Injury Stems From Remediation Work Performed Under a Non-DOE Contract

To be eligible for compensation under Part B of EEOICPA, a claimant must be a "covered employee," 42 U.S.C. § 7384s(a), and the term "covered employee" includes a "covered beryllium employee," 42 U.S.C. § 7384l(1)(A). The term "covered beryllium employee" encompasses several classes of employees, all of whom are required to have been exposed to beryllium in the performance of duty. One such class, at issue here, is an employee who is either "[a] current or former employee of a beryllium vendor. . .during a period when the vendor was engaged in activities related to the production or processing of beryllium for sale to, or use by, the Department of Energy." 42 U.S.C. § 7384l(7)(c) (emphasis added).[6] An agency is

---

[6]Covered beryllium employees also include: (1) a current or former employee as defined in the Federal Employees' Compensation Act, who may have been exposed to beryllium at a DOE facility or a facility owned, operated, or occupied by a beryllium vendor; (2) a current or former employee of any entity that contracted with DOE to provide management and operation, management and integration, or environmental remediation of a DOE facility; or (3) a current or

certainly entitled to <u>Chevron</u> deference in its interpretation of an inherently ambiguous phrase

such as "related to," as the D.C. Circuit has recognized in different context.  <u>See</u> <u>National Labor</u>

<u>Relations Board v. Federal Labor Relations Authority</u>, 952 F.2d 523, 530 (D.C. Cir. 1992)

(deferring to FLRA's interpretation of "guidance, advice, counsel, or training . . . relating to

collective bargaining").

      The Secretary's implementing regulation at 20 C.F.R. § 30.205(a)(2)(iii) more precisely

defines certain remediation "activities related to production or processing of beryllium" that are

to be included for purposes of identifying a "covered beryllium employee."  That regulation

extends coverage to "periods during which environmental remediation of a [beryllium] vendor's

facility was undertaken pursuant to a contract between the vendor and DOE."  <u>Id</u>.  As is clear

from his most recent administrative appeal, Brigham concedes that the remediation at the Coors

Porcelain facility while he was employed there was not undertaken pursuant to a DOE contract;

instead, the contract was with Morrison-Knudsen Engineers, a private entity.  Thus the

regulation, which on its face only extends coverage to remediation undertaken pursuant to a DOE

contract, forecloses Brigham's argument that the remediation of the Coors Porcelain facility

constituted a covered activity.

      Brigham's challenge, therefore, is effectively a challenge to the validity of the Secretary's

regulation limiting coverage to injuries from remediation conducted under a contract with DOE.

He argues that any "formal and informal efforts to remediate residual beryllium contamination

created during [Coors Porcelain's] DOE production contracts" were "related to" covered

---

former employee of any contractor or subcontractor that provided services, including
construction and maintenance, at such a facility.  42 U.S.C. § 73841(7)(A) and (B).

activities, regardless of whether, as the regulation requires, the remediation work itself was done pursuant to a DOE contract. Compl. ¶ 15. Thus, the gravamen of Brigham's complaint is that the remediation done in 1985 (which allegedly caused his injury) was a "related to" beryllium production and processing activity, despite the fact that the facility had stopped producing beryllium for DOE in 1975 and that the subsequent remediation work was <u>not</u> done under a DOE contract. 20 C.F.R. § 30.205(a)(2)(iii) directly forecloses that claim.

The Secretary's regulation represents a sound exercise of her authority and responsibility to administer the statute by providing a reasonable construction of a broad statutory phrase, and thus is entitled to <u>Chevron</u> deference. EEOICPA is not a compensation system for all the employees of beryllium vendors. Instead, EEOICPA coverage is limited to an enumerated subset of employees who worked for the vendor during periods the vendor was undertaking activities related to the production or processing of beryllium for sale or use by DOE. The Secretary's regulation, which limits coverage for environmental remediation services to those to which DOE has been a party, is inherently reasonable, resting on sound policy, facilitating practical and cost-effective administration and placing reliance on trustworthy and accessible evidence.

Without DOE approval of remediation, OWCP is not in a position to determine if the beryllium contamination was the product of processing or production of beryllium for sale to or use by DOE. If the beryllium contamination was the result of something other than such processing or production, providing compensation to an employee injured by it would not be authorized by EEOICPA. OWCP has a duty to see that funds under the Act are not spent on activities that Congress did not intend to cover. Requiring the existence of a contract between DOE and the beryllium vendor for remediation work avoids potentially protracted and costly

evidentiary battles.  Instead, it ensures an efficient, practical and trustworthy method of identifying remediation activities that were "related to" the vendor's production or processing of beryllium for sale to or use by DOE.

The reasonableness of the Secretary's regulation is reinforced by looking to other provisions of the statute, where Congress itself placed the same qualification on covered remediation work that is undertaken at a DOE facility, i.e., that it must be done pursuant to a DOE contract.  In defining both the terms "Department of Energy contractor employee" and "Department of Energy facility," the statute includes the time period that a facility was undergoing environmental remediation, but limits such environmental remediation services, like the Secretary's regulation at issue, to those performed pursuant to a contract with DOE.  See 42 U.S.C. §§ 7384l(11) and (12).

The Secretary's regulation, therefore, represents a patently reasonable construction of the ambiguous "related to" phrase in section 7384l(7)(c), by simply echoing Congressional intent that remediation, to be a covered activity, must be done pursuant to a DOE contract.  To have not included this limitation would have required OWCP to conclude that Congress intended by inference through complex legislative interpretation to make remediation coverage for employees of beryllium vendors more expansive than for Department of Energy contractor employees.  Such a conclusion about congressional intent defies common sense, and is hardly the only permissible construction of the statute.

Plaintiffs' claim is undeniably foreclosed by 20 C.F.R. § 30.205(a)(2)(iii), since plaintiff admits that the remediation contract in question was not between Coors Porcelain and DOE.  As DOL's regulation clearly adopted a "permissible" construction of the Act, in clarifying the

14

meaning of the ambiguous "related to" phrase in section 7384l(7)(c), plaintiff's claim must be dismissed.

## CONCLUSION

Wherefore, plaintiff's complaint should be dismissed with prejudice for failure to state a claim.

DATED: July 21, 2006                         Respectfully submitted,


                                              PETER D. KEISLER
                                              Assistant Attorney General
                                              KENNETH L. WAINSTEIN
                                              United States Attorney



OF COUNSEL:                                   /s/ Daniel Bensing

                                              RICHARD G. LEPLEY
STEPHEN SILBIGER                              DANIEL E. BENSING (D.C. Bar No. 334268)
Office of the Solicitor                       Attorneys, U.S. Department of Justice
Department of Labor                           Civil Division, Federal Programs Branch
                                              20 Massachusetts Ave., N.W., Room 6114
                                              Washington, D.C.  20001
                                              Telephone:  (202) 305-0693
                                              Facsimile:  (202) 616-8460

Certificate of Service

I hereby certify that on this 21thth day of July, 2006, I caused to be served by mail a copy of Defendants' Motion to Dismiss, supporting Memorandum and two attachments upon the following counsel for plaintiffs:

Brian Wolfman
Public Citizen Litigation Group
1600 20th St., N.W.
Washington, D.C. 20009

/s/_____
DANIEL BENSING

16