


| | |
|---|---|
| **U.S. DEPARTMENT OF LABOR** | Employment Standards Administration<br>Energy Employees Occupational Illness Compensation<br>1999 Broadway Suite 1120<br>PO Box 46550<br>Denver CO 80201-6550<br>Tel: (888) 805-3389 |

Worker: James D. Brigham
Claimant: James D. Brigham
Claim Number: ▮▮▮▮▮▮
File Date: February 19, 2002
Issuance Date: SEP 2 8 2005

## NOTICE OF RECOMMENDED DECISION

This is a Recommended Decision of the Denver District Office concerning the claim filed by James D. Brigham seeking compensation and medical benefits under Part B of the Energy Employees Occupational Illness Compensation Program Act (EEOICPA). The Denver District Office **recommends denial** of the claim for compensation and medical benefits filed by James D. Brigham.

## STATEMENT OF THE CASE

On February 19, 2002, James D. Brigham, filed an EE-1, Claim for Benefits under EEOICPA, for compensation of $150,000 and medical benefits for chronic beryllium disease. James D. Brigham claimed he was diagnosed with chronic beryllium disease on May 8, 1990. James D. Brigham submitted a EE-3, Employment History with an attachment indicating that he was employed by Coorstek, Coors Ceramics in Golden, Colorado from June 1983 – 1995; an itemized statement of earnings from the Social Security Administration listing employment with Coorstek Inc during the years of 1983 – 1995; an "Authorization for Representation" appointing Steve Jensen, Baron & Budd, PC as his representative; and medical records from the National Jewish Medical and Research Center to support his claim for chronic beryllium disease.

The medical evidence submitted included a report signed by Dr. Lee Newman on May 8, 1990, giving the impression "Mr. Brigham has definite beryllium disease, conclusively demonstrated by his biopsy and repeat lavage with attempts to enrich the lavage material for lymphocytes." The medical evidence also contains more than three of the five test results to meet the pre-1993 statutory definition for "chronic beryllium disease."


DEFENDANT'S EXHIBIT
06-958



*Characteristic chest radiograph or computed tomography denoting abnormalities*
A high resolution CT scan from May 5, 1990 gives the impression as "Abnormal consistent with chronic granulomatous disease such as sarcoidosis or berylliosis, or hypersensitivity pneumonitis."

A chest x-ray from October 8, 1991 gives the impression as "Mild nodular interstitial lung disease, increased from 2-6-90; most prominent at the bases, compatible with chronic beryllium disease. Mild cardiomegaly."

*A restrictive or obstructive lung physiology test or diffusion lung capacity defect*
A lung function test from March 16, 1992 that gives the interpretation as "Restricted lung volumes. Increased flows for lung volumes. Normal DLCO. Decreased maximal expiratory force suggests weakness or poor effort."

*Lung pathology consistent with chronic beryllium disease*
The tissue pathology report from February 20, 1990 that gives the diagnosis of "Right bronchial and transbronchial lung biopsies – mild chronic bronchitis – rare granulomas identified (see comment) – hemosiderosis."

*Clinical Course consistent with chronic beryllium disease*
Numerous medical records from the National Jewish Center for Immunology and Respiratory Medicine clinic care and follow up for diagnosis/treatment of chronic beryllium disease starting in February 6, 1990 through July 7, 1998. It is noted in the report of November 15, 1994 that prednisone therapy had been recently started for the chronic beryllium disease.

*Immunologic tests showing beryllium sensitivity (skin patch test or beryllium test)*
The lymphocyte transformation test (LTT) of the peripheral blood from January 9, 1990 giving an interpretation of positive lymphocyte transformation to beryllium sulfate.

The LTT of the bronchoalveolar lavage from April 10, 1990 giving an interpretation of positive lymphocyte transformation to beryllium sulfate.

James D. Brigham claimed that he was exposed to beryllium at Coorstek/Coors during his employment there from 1983 – 1995. The Department of Energy has designated Coors Porcelain, also known as Coors Ceramic, as a beryllium vendor for the time period of 1947 – 1975, during which time Coors Porcelain performed beryllium work for the Atomic Energy Commission.

On March 1, 2002, and May 3, 2002, the Denver District Office advised James D. Brigham and his representative by letter to submit evidence to support that Coorstek/Coors Porcelain maintained a contract beyond the time period of 1947 – 1975.



On March 26, 2002, and June 28, 2002 the Denver District Office did receive additional documentation that included an argument that remediation activities fell within the scope of activities that can be considered as "related to the production or processing of beryllium" and orders of dismissal in the class action lawsuits against Brush Wellman and Coors Porcelain dated June 20, 2002 and February 13, 1998, as well as a completed EN-15 signed by James D. Brigham on February 9, 2002. James D. Brigham attested to the fact that he filed a tort suit against a beryllium vendor on November 7, 1996 and that the tort suit against Brush Wellman, Inc. & Coors Porcelain Company was dismissed June 20, 2002 and February 13, 1998. James D. Brigham attested that he has not received any settlement or award from a claim or suit against a third party nor pled guilty or been convicted of fraud.

On September 12, 2002, the District Office issued a Notice of Recommended Decision to recommend denial because James D. Brigham was not a covered beryllium employee.

On February 20, 2003, the Final Adjudication Branch issued a Notice of Final Decision and affirmed that James D. Brigham was not a covered beryllium employee and denied the claim.

On March 27, 2003, James D. Brigham filed a request for reconsideration of the Final Decision. James D. Brigham's representative argued that although James D. Brigham did not work at a DOE facility during a covered period of time that he did work there while there was ongoing remediation of residual beryllium contamination resulting from the processing of beryllium for the DOE, and therefore should be considered a "covered beryllium employee."

The Washington Final Adjudication Branch issued a Denial of Request for Reconsideration on May 20, 2003, because the period of employment was outside the covered period for that facility and no evidence was submitted of a contractual relationship between the covered beryllium vendor and the Department of Energy during the claimed period of employment.

A Director's Order was issued on April 8, 2005 directing the District Office to thoroughly consider the arguments for coverage raised by James D. Brigham's attorney and issue a new recommended decision on the claim with full appeal rights. The order instructed the District Office to specifically decide the questions whether James D. Brigham is a "covered beryllium employee" under §7384l(7)(C) of the Act because James D. Brigham was employed by Coorstek/Coors Porcelain during a period that environmental remediation was undertaken pursuant to a contract between that beryllium vendor and the DOE, regardless of whether James D. Brigham actually performed work that was specifically in fulfillment of the remediation contract.



The evidence in file shows that James D. Brigham's representative submitted the following evidence for consideration that James D. Brigham is a "covered beryllium employee":

- Minutes of the Toxic Material Board Meeting held on July 28, 1970 that discusses some of the procedures/problems being encountered as a result of the BeO Department move to Building 16.
- A Coors Industries inter-department communication dated June 5, 1985 that refers to Building 16.
- A letter dated May 24, 1985 to OSHA by Timothy R. Gablehouse, managing attorney for Adolph Coors Company concerning the sampling and cleanup of Building 16 of static Beryllium Oxide and the announcement to certain employees of the Coors Porcelain Company along with the undated memorandum to all Building 16 employees advising that Coors Porcelain Company recently became aware that static Beryllium Oxide (BeO) was present on some internal building surfaces, primarily above suspended ceiling title. This memo also states that Morrison-Knudsen Company will conduct the cleanup and that all Building 16 employees will be relocated to other areas before the cleanup starts in June 1985.
- A memorandum dated May 29, 1985 from Don Shook, Corporate Communications that Coors Porcelain Company was aware of the existence of static BeO, a high-melting oxide fired into ceramic products, on some internal surfaces in Building 16 and that BeO was used from 1970 to 1975 in the company's ceramic manufacturing processes. This memorandum states that Coors Porcelain Company has retained Morrison-Knudsen Engineers to aid in evaluation, and to take appropriate cleanup action.
- A letter dated May 28, 1985 from E. Robert White, Director, Project Development of Morrison-Knudsen Engineers, Inc. regarding a status summary of their sampling effort in Building 16.
- A Coors Porcelain Company memorandum dated February 26, 1985 regarding Building 16 BeO sampling.
- A medical record for the clinic visit of February 6, 1990 for James D. Brigham discussing his employment at Coors Ceramics starting in June 1983 and indicating he worked in Building 16 for the first six months and that cleaning up and sweeping up all over Building 16 was part of his job.

The Denver District Office contacted Dane Bartlett, Legal Department, Coors Porcelain to determine if DOE was a party to their contract to decontaminate and demolish (Building 16) that was used for AEC operations. He believed that these materials would show us that DOE had no involvement in the razing or remediation of Building 16. Coors Porcelain had made the decision to decontaminate and demolish Building 16 in 1985. The site was demolished for Coors Porcelain by Morrison-Knudsen Engineers and they made the site an employee parking lot. Mr. Bartlett stated that if additional information was needed besides the materials that he would make available, that we should contact the Environmental Health and Safety Office at Coors Ceramics Company (formerly Coors Porcelain). That office was contacted by the Denver District Office and they also stated that Coors Porcelain made the decision to raze



Building 16 and funded the project with no oversight or involvement from DOE. The contract to raze Building 16 was between Coors Porcelain and Morrison-Knudsen Engineers with no involvement from DOE.

The materials that Mr. Bartlett provided to the Denver District Office show that Coors Porcelain had contracted directly with Morrison-Knudsen to decontaminate and demolish Building 16 with no DOE oversight or involvement. The documentation contained a memorandum dated November 20, 1987 from Andrew Walls (DOE) in reference to identifying sites for the Formerly Utilized Sites Remedial Action Program (FUSRAP). The Denver District Office reviewed all the information, specifically the section in the memorandum where Mr. Walls writes his recommendation on whether Coors Porcelain should be considered for FUSRAP. Mr. Walls states that Coors was not a site for FUSRAP program because the facility was adequately decontaminated by the owner. No FUSRAP actions are needed. The summary section stated that the owner (Coors) contracted M.K.(Morrison -Knudsen Engineers) to decontaminate the site. Morrison-Knudsen Engineers decontaminated the site and also verified its radiological status for Coors Porcelain.

## FINDINGS OF FACT

1. James D. Brigham filed a claim seeking $150,000.00 in compensation and medical benefits as a beryllium vendor employee for the occupational illness of chronic beryllium disease under the Energy Employees Occupational Illness Compensation Program Act on February 19, 2002.

2. James D. Brigham was diagnosed with chronic beryllium disease on February 20, 1990 based on an abnormal beryllium lymphocyte proliferation test, a lung biopsy showing a lymphocytic process consistent with chronic beryllium disease, a high resolution CT scan that gave impressions as "Abnormal consistent with chronic granulomatous disease such as sarcoidosis or berylliosis, or hypersensitivity pneumonitis", and a lung function test interpreted as "Restricted lung volumes. Increased flows for lung volumes. Normal DLCO. Decreased maximal expiratory force suggests weakness or poor effort."

3. James D. Brigham was not a covered beryllium vendor employee at Coors Porcelain in Golden, Colorado. James D. Brigham was an employee at Coorstek (Coors Porcelain) during 1983 to 1995, a period when the facility was not a covered beryllium vendor. Coors Porcelain is considered a beryllium vendor by the Department of Energy for the time period of 1947 – 1975.

4. Coors Porcelain contracted with Morrison-Knudsen Engineers in 1985 for cleanup of Beryllium Oxide that was used from 1970 to 1975 in the company's ceramic manufacturing processes. Department of Energy was not a party or had any involvement in the contractual



relationship between Coors Porcelain and Morrison-Knudsen Engineers to decontaminate or demolish Building 16.

5. James D. Brigham submitted evidence that the lawsuits that he filed against a beryllium vendor were dismissed and attested to the fact that he has not received a third party settlement, or been convicted of fraud.

## CONCLUSIONS OF LAW

James D. Brigham was not a "covered beryllium employee" as defined by 42 U.S.C. §7384l(7)(C) Part B of the EEOICPA because his employment at a beryllium vendor site was during a time when the facility was not covered under the Department of Energy.

James D. Brigham was diagnosed with chronic beryllium disease in accordance with the criteria set forth in 42 U.S.C. §7384l(13)(B) Part B of the EEOICPA.

James D. Brigham is not entitled to compensation in the amount of $150,000 or medical benefits for the approved condition of chronic beryllium disease pursuant to 20 C.F.R. §30.205(a)(2)(iii) because he was employed during a period when the vendor was not engaged in activities related to the production or processing of beryllium for sale to, or use by, the DOE, including periods during which environmental remediation of a vendor's facility was undertaken pursuant to a contract between the vendor and DOE.

*Will Mercado*
Will Mercado
Senior Claims Examiner



## NOTICE OF RECOMMENDED DECISION AND CLAIMANT RIGHTS

THIS NOTICE EXPLAINS HOW TO FILE OBJECTIONS TO THE RECOMMENDED DECISION ISSUED BY THE DISTRICT OFFICE UNDER THE ENERGY EMPLOYEES OCCUPATIONAL ILLNESS COMPENSATION PROGRAM ACT.

IF YOU WISH TO OBJECT TO THE RECOMMENDED DECISION, YOU MUST FOLLOW THE INSTRUCTIONS IN THIS NOTICE – IF YOU FAIL TO SPECIFY AN OBJECTION TO THIS DECISION, IT WILL BE AFFIRMED BY THE FINAL ADJUDICATION BRANCH AND YOU WILL BE DEEMED TO HAVE WAIVED YOUR RIGHT TO CHALLENGE THE DECISION.

IF YOU DISAGREE WITH ALL OR ANY PART OF THE RECOMMENDED DECISION:

If you disagree with all or any part of this Recommended Decision, you must file objections by writing to the Final Adjudication Branch at

> FINAL ADJUDICATION BRANCH/DEEOIC
> U. S. DEPARTMENT OF LABOR
> P.O. BOX 46550
> DENVER, CO 80201-6550

within sixty 60 days from the date of the Recommended Decision and clearly state the reasons for your disagreement. Your objections should indicate the specific finding of fact or conclusion of law with which you disagree, including any objection to any dose reconstruction performed. If you want an oral hearing on your objection, you must request it when you file your objection. If you do not include a request for an oral hearing with your objection, the Final Adjudication Branch will consider your objections through a review of the written record, which will allow you to present written evidence or argument in support of your claim. If you fail to file objections to this decision **within 60 days of the date of this decision** your right to challenge this decision will be waived for all purposes, therefore you will not be able to seek further review of this decision.

**IF YOU AGREE WITH THE RECOMMENDED DECISION:**
If you agree with the Recommended Decision and wish for it to be issued as a Final Decision without change, you may waive the sixty-day period to object to the Recommended Decision. This will allow the Final Adjudication Branch to issue a Final Decision before the end of the sixty-day period. If you want to waive any objection to the Recommended Decision, send a letter to the Final Adjudication Branch, listed above, stating that you wish to waive any objection to the Recommended Decision. If you wish to object to any part of the Recommended Decision and waive any objections to other parts of the decision, you may do so. In that case, the Final Adjudication Branch may issue a Final Decision on the parts of the Recommended Decision to which you do not object.

**Be sure to provide your name, case number and date of the Recommended Decision in any objection or other correspondence to the Final Adjudication Branch.**