IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES DOUGLAS BRIGHAM, § | |
| § | |
| Plaintiff, § | Civil Action No. 1:06CV00958 (JR) |
| § | ECF |
| v. § | |
| § | |
| OFFICE OF WORKERS § | |
| COMPENSATION PROGRAMS, et al., § | |
| § | |
| Defendants. § | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**I.   INTRODUCTION**

The Department of Labor regulation upon which Defendants based their denial of Plaintiff James Douglas Brigham's claim under the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA") cannot withstand scrutiny under the two-part analysis in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984).  In interpreting Congress's statutory definition of "covered beryllium employee," the Department of Labor has explicitly acknowledged that environmental remediation of beryllium contamination made necessary by production and processing of beryllium for the Department of Energy is an activity "related to" that production and processing.  *See* 20 C.F.R. § 30.205(a)(2)(iii) (providing that remediation of beryllium performed under contract with the Department of Energy is an activity "related to production or processing of beryllium for sale to, or use by, the DOE").

That admission alone requires that the motion to dismiss be denied.  Mr. Brigham alleges that he worked at Coors Porcelain ("Coors") during a period when Coors remediated beryllium

contamination that resulted from Coors's production or processing of beryllium for the Department of Energy. Thus, by acknowledging that remediation of beryllium is "related to" the production or processing of beryllium, the Department of Labor has effectively admitted that Mr. Brigham is a "covered beryllium employee."

Despite that admission, Defendants have nonetheless denied Mr. Brigham coverage, as the Department of Labor's regulation adds an extra-statutory requirement for qualification as a "covered beryllium employee," which was nowhere even suggested by Congress. Under the regulation, employees who worked for a beryllium vendor during a period of beryllium remediation are not "covered beryllium employees" unless the remediation was performed under contract with the Department of Energy. Thus, even where (as here) the contamination being remediated by some other party (or by the beryllium vendor itself) resulted directly from production or processing done for the Department of Energy, the Department of Labor will treat such remediation as if it is *not* "related to" that production or processing. This Court should reject this unreasonable and internally inconsistent regulatory interpretation of Congress's definition of "covered beryllium employee" and deny Defendants' motion to dismiss.[1]

## II.   UNDER *CHEVRON*, THE COURT MUST REJECT THE DEPARTMENT OF LABOR'S REGULATORY INTERPRETATION OF THE STATUTORY DEFINITION OF "COVERED BERYLLIUM EMPLOYEE."

When confronted with a challenge to an administrative agency's interpretation of a statute within that agency's regulatory purview, this Court must undertake a two-step analysis to assess whether the agency has overstepped its statutory authority. First, the Court must determine "if the

---

[1] Defendants' memorandum in support of their motion accurately summarizes the facts relevant to Mr. Brigham's claim. Plaintiff will not repeat that summary here.

statute is silent or ambiguous with respect to the specific issue" under debate. *Chevron*, 467 U.S. at 843. To the extent that the relevant statutory language unambiguously answers the question at issue, the court's inquiry ends with this first step, without regard to the agency's interpretation of the statute. If, on the other hand, the court determines that Congress has delegated to the agency authority to "fill the gaps" with respect to the relevant issue, the court proceeds to the second step of the analysis, which requires a determination as to whether the administrative agency's interpretation is "based on a permissible construction of the statute." *Id.* Although courts must accord deference to such agency interpretations, those interpretations must nonetheless be reasonable in light of the language and history of the statute. "If the text is ambiguous and so open to interpretation in some respects, a degree of deference is granted to the agency, though a reviewing court need not accept an interpretation which is unreasonable." *Nat'l R.R. Passenger Corp. v. Boston and Maine Corp.*, 503 U.S. 407, 417-18 (1992).

As set out below, the Department of Labor's regulatory interpretation of the statutory term "covered beryllium employee" fails both prongs of the *Chevron* test.

**A.   The Statutory Term "Covered Beryllium Employee" Unambiguously Encompasses a Worker Employed by a Beryllium Vendor While That Vendor Is Engaged in Remediation Made Necessary By the Production or Processing of Beryllium for the Department of Energy.**

The Department of Labor's regulatory interpretation conflicts with the unambiguous language of the statute defining the term "covered beryllium employee" for purposes of the Energy Employees Occupational Illness Compensation Program. In relevant part, that definition encompasses employees of beryllium vendors who worked "during a period when the vendor was engaged in activities related to the production or processing of beryllium for sale to, or use by, the Department

of Energy." 42 U.S.C. § 7384l(7)(C). In this case, the specific issue is whether environmental remediation made necessary by the production or processing of beryllium for the Department of Energy is an activity "related to" that production or processing. Defendants argue that the phrase "related to" is inherently ambiguous for all purposes, and that this inherent ambiguity requires this Court to proceed to *Chevron* step two. *See* Def. Memo. at 12. This argument fails because it does not address whether the statute is ambiguous with respect to the *specific* issue at hand. *See Chevron*, 467 U.S. at 843 n.9 ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect"). To be sure, ambiguity may exist as to whether the term "activities related to the production or processing of beryllium" encompasses activities by a beryllium vendor *other than* remediation. For example, implementation of a medical surveillance program for beryllium-exposed workers arguably falls within that definition, even though such an activity does not itself create any risks of beryllium exposure and disease.

By contrast, there is no room for ambiguity with respect to the specific issue in this case: whether remediation is "related to" beryllium production or processing. As one commentator has written regarding the assessment of ambiguity under *Chevron*, "[t]he danger of *Chevron* is that it invites courts to ignore the fact that Congress decided some things because it did not decide everything." Norman J. Singer, "Deference Running Riot: Separating Interpretation and Lawmaking Under Chevron," in 2B Sutherland Statutory Construction § 56A:16 (6th ed. 2005). This Court should reject that invitation here. *See Goldstein v. SEC*, 451 F.3d 873, 880-81 (D.C. Cir. 2006) (holding that an agency's definition of "client" was unreasonable in light of the language of the statute, even assuming that Congress had granted the agency some discretion to define that term);

*In re Old Fashioned Enters., Inc.*, 236 F.3d 422, 426 (8th Cir. 2000) ("Ambiguity anywhere in a statute is not a license to the administrative agency [or a court] that interprets the statute to roam about that statute looking for other provisions to narrow or expand through the process of definition. The delegated authority to interpret an ambiguous term extends only to the specific subject matter covered by the ambiguous term.") (quoting *Bower v. Fed. Express Corp.,* 96 F.3d 200, 208 (6th Cir.1996)).

This Court must interpret the scope of a beryllium vendor's work under 42 U.S.C. § 7384l(7)(C) to be broader than if the phrase "activities related to" had been omitted and the statute instead referred only to employment "during a period when the vendor was engaged in ~~activities related to~~ the production or processing of beryllium for sale to, or use by, the Department of Energy." By including the words struck out above, Congress necessarily intended that there be *some* activities other than the production or processing of beryllium itself that are sufficiently "related to" that production or processing that they come within the ambit of the statute. *See Morales v. Trans-World Airlines, Inc.*, 504 U.S. 374, 385 (1992) ("Petitioner contends that § 1305(a)(1) only pre-empts the States from actually prescribing rates, routes, or services. This simply reads the words 'relating to' out of the statute. Had the statute been designed to pre-empt state law in such a limited fashion, it would have forbidden the States to '*regulate* rates, routes, and services.'"). If the phrase "activities related to" is to be provided any coherent meaning, it must at the very least include activities that are not only *made necessary by* the production or processing of beryllium for the government, but also create the *very same kinds of risks* of exposure and injury that flow from beryllium production and processing. Environmental remediation is just such an activity, and compensating injuries that result from remediation work comports with the core purpose of the statute.

In other contexts, the Supreme Court has made clear that the scope of the statutory phrase "related to" or "relating to" is sweeping. *See, e.g.*, *Morales*, 504 U.S. at 383-84 (noting that the "ordinary meaning" of the phrase "relates to" expresses a "broad purpose"); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (noting the "expansive sweep" of ERISA's preemption clause based on its inclusion of all state law that "relates to" employee benefit plans). Here, the "expansive sweep" of the phrase "activities related to the production or processing of beryllium" unquestionably encompasses environmental remediation, even if the phrase is ambiguous at its outer limits or in some respects. Thus, because the unambiguous language of the statute dictates that workers in Mr. Brigham's circumstances are "covered beryllium employee[s]," this Court need go no further in its analysis and should deny Defendants' motion to dismiss.

> B.  **The Department of Labor's Interpretation of "Covered Beryllium Employee" Creates an Unreasonable and Internally Inconsistent Dichotomy Between Remediation Conducted Under Contract with the Department of Energy and All Other Remediation.**

If this Court assumes some ambiguity in the definition of "covered beryllium employee," even as it relates to employees of beryllium vendors who were engaged in remediation, Mr. Brigham wins at *Chevron* step two. That is so because the Department of Labor's interpretive regulation resolves that ambiguity *in favor of* Mr. Brigham, *i.e.*, it expressly covers workers who were engaged in remediation. Despite that concession, the agency's regulation adds a separate, extra-textual requirement based on whether the Department of Energy itself participated in the remediation. Thus, according to the Department of Labor, the statutory definition of "covered beryllium employee" includes any worker employed by

> [a] beryllium vendor, or of a contractor or subcontractor of a beryllium vendor, during a period when the vendor was engaged in activities related to the production

6

> or processing of beryllium for sale to, or use by, the DOE, *including periods during which environmental remediation of a vendor's facility was undertaken pursuant to a contract between the vendor and DOE*.

20 C.F.R. § 30.205(a)(2)(iii) (emphasis added).

The notion that coverage exists only when environmental remediation has been "undertaken pursuant to a contract between the vendor and DOE" has no basis in the statute and creates an internal inconsistency in the Department of Labor's interpretation of the statutory language. If, as the Department of Labor concludes, remediation performed under contract with the Department of Energy is "related to" the production or processing of beryllium, then remediation of that same contamination performed without the Department of Energy's participation must also be "related to" the production or processing of beryllium. Nothing in the language, history, or purpose of the statute differentiates coverage for employees based on whether the Department of Energy is performing the activity "related to the production or processing of beryllium." To the contrary, the statute is clear that the relevant time period for coverage is triggered only by reference to when "the *vendor* is engaged in activities related to the production or processing of beryllium[,]" 42 U.S.C. § 7384l(7)(C) (emphasis added), rather than by reference to periods during which the Department of Energy or anyone else is engaged in the same activities.

The Department of Labor's internally inconsistent approach to workers involved in remediation is fatal to its interpretive regulation because the inconsistency demonstrates that the regulation strays outside the authority delegated to the agency by Congress. "An agency construction of a statute cannot survive judicial review ... if a contested regulation reflects an action that is inconsistent with the agency's authority. It does not matter whether the unlawful action arises because the disputed regulation defies the plain language of a statute or because the agency's

7

construction is utterly unreasonable and thus impermissible." *Nat'l Treasury Employees Union v. Chertoff*, 452 F.3d 839, 864 (D.C. Cir. 2006); *see also Gonzales v. Oregon*, 126 S. Ct. 904, 916 (2006) ("Chevron deference ... is not accorded merely because the statute is ambiguous and an administrative official is involved. To begin with, the rule must be promulgated pursuant to authority Congress has delegated to the official."); Singer, *supra*, in 2B Sutherland Statutory Construction § 56A:16 ("*Chevron* does not require a court to accept an agency's view of the scope of its delegated authority, jurisdictional or substantive. By definition, Congress cannot have left this determination to the agency."). In this instance, because the statutory language defining "covered beryllium employee" does not differentiate based on the participation of the Department of Energy in "activities related to the production or processing of beryllium," the Department of Labor has exceeded its delegated authority by drawing such a distinction. As noted, given that the Department of Labor has acknowledged that remediation conducted by a beryllium vendor under contract with the Department of Energy is "related to" the production or processing of beryllium, Defendants lack delegated authority under the statute to deny that remediation of the very same beryllium created by the very same production or processing also satisfies the statutory "related to" requirement.

Defendants do not, of course, argue that remediation undertaken without the participation of the Department of Energy is somehow "unrelated to" the production or processing of beryllium. Instead, they defend the regulation on the ground of administrative convenience, reflecting the Department of Labor's decision to "facilitat[e] practical and cost-effective administration [] placing reliance on trustworthy and accessible evidence." Def. Mem. at 13. According to Defendants, "[w]ithout DOE approval of remediation, OWCP is not in a position to determine if the beryllium contamination was the product of processing or production of beryllium for sale to or use by DOE.

If the beryllium contamination was the result of something other than such processing or production, providing compensation to an employee injured by it would not be authorized by EEOICPA. ... Requiring the existence of a contract between DOE and the beryllium vendor for remediation work avoids potentially protracted and costly evidentiary battles." Def. Mem. at 13-14.  This alleged cost-savings mechanism cannot serve as a basis for altering Congress's definition of "covered beryllium employees."  As a matter of fairness and due process, claimants in the position of James Douglas Brigham must be permitted the opportunity to prove that any beryllium contamination remediated by their employers during their employment was created, at least in part, during the course of processing or production done for the DOE.  That question raises only an issue of *fact* as to whether the claimant falls within the definition, rather than an issue of statutory interpretation as to the breadth of the definition itself.

      The agency's so-called "interpretation" results in a new, extra-textual definition of "covered beryllium employee" that is both underinclusive and overinclusive. The Department of Labor's interpretation is underinclusive where, as in this case, a claimant worked for a beryllium vendor that contracted with a third party to remediate contamination created during its contracts with the DOE. The regulation is potentially overrinclusive because it would arguably provide coverage to an employee of a beryllium vendor that entered into a contract with the DOE to undertake environmental remediation of some facility (or area within a facility) where no beryllium production or processing for the DOE had been performed, but beryllium contamination resulted from other work. This Court cannot defer to an agency "interpretation" that effectively concedes its departure from statutory language on the ground that Congress's approach is inconvenient or too expensive.

      Defendants are simply wrong that the EEOICPA's definitions of "Department of Energy

contractor employee," 42 U.S.C. § 7384l(11), and "Department of Energy facility," 42 U.S.C. § 7384l(12), somehow support the Department of Labor's interpretation of the term "covered beryllium employee." *See* Def. Mem. at 14. The terms relied on by Defendants necessarily require affirmative participation in some activity by the DOE itself; after all, both use the term "Department of Energy" as an adjective. By contrast, the term "covered beryllium employee" in subsection 7384l(7)(C), the subsection under which Mr. Brigham seeks coverage, is *not* modified by the term "Department of Energy." And its definition of "covered beryllium employee" does not require DOE participation in activities "related to the production or processing of beryllium for sale to, or use by, the Department of Energy."

Indeed, one of the statutory terms relied on by Defendants – "Department of Energy facility" – affirmatively supports Mr. Brigham's understanding of the statutory structure. Besides creating an internal inconsistency with respect to treatment of a vendor's remediation activities, the Department of Labor's regulation also fails because it would, in fact, render portions of the statute superfluous. To the extent that a beryllium vendor such as Mr. Brigham's employer, Coors Porcelain, conducted environmental remediation under contract with the DOE, subsection 7384l(7)(B) would provide coverage for Mr. Brigham independently of subsection 7384l(7)(C) at issue in this case. Subsection (B) provides an alternative definition of "covered beryllium employee." It includes an employee of "any entity that contracted with the Department of Energy to provide management and operation, management and integration, or *environmental remediation* of a Department of Energy facility." 42 U.S.C. § 7384l(7)(B) (emphasis added). In a corresponding section of the statute, Congress defined "Department of Energy facility" to include "any building" with respect to which the Department of Energy has "entered into a contract with an entity to provide

10

management and operation, management and integration, *environmental remediation services*, construction, or maintenance services." 42 U.S.C. § 7384l(12)(B)(ii) (emphasis added).

Thus, if Coors had contracted with the DOE to perform remediation of its beryllium contamination, Mr. Brigham would not need to rely on the "related to" language in subsection 7384l(7)(C). He could have turned instead to subsection 7384l(7)(B). By virtue of contracting with the DOE for cleanup, the Coors facility would have become a "Department of Energy facility" for purposes of the statute, and Mr. Brigham would have been an employee of "any entity that contracted with the Department of Energy to provide ... environmental remediation of a Department of Energy facility" within the meaning of subsection 7384l(7)(B). Put differently, the Department of Labor's regulatory gloss on subsection (C) makes no sense because employees benefitting from it would already be covered by subsection (B). As Defendants' own authority demonstrates, this Court should reject statutory interpretations of one subsection that would render another subsection meaningless. *See Nat'l Labor Relations Bd. v. Fed. Labor Relations Auth.*, 952 F.2d 523, 529-30 (D.C. Cir. 1992) (rejecting a statutory interpretation that would render a disclosure requirement meaningless by giving an exemption from disclosure the same breadth).

### III.    CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion to dismiss.

Date:   September 6, 2006                        Respectfully submitted,

By:    /s/ _____
       Steve Baughman Jensen
       TX Bar No. 00783615
       BARON & BUDD, P.C.
       3102 Oak Lawn Avenue, Suite 1100
       Dallas, TX 75219
       Phone: (214) 521-3605
       Fax: (214) 520-1181

       /s/ _____
       Brian Wolfman
       DC Bar No. 427491
       Public Citizen Litigation Group
       1600 20th Street
       Washington, D.C. 20009
       Phone: (202) 588-1000
       Fax:    (202) 588-7795

       **Attorneys for Plaintiff**