IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES DOUGLAS BRIGHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:06CV00958 (JR) |
| ) | |
| OFFICE OF WORKERS' ) | |
| COMPENSATION PROGRAMS, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**REPLY MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**

Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opposition") fails to demonstrate the validity of plaintiff's statutory arguments at each step of the required Chevron analysis. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984). First, plaintiff has failed to show how the statutory language from the Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA"), 42 U.S.C. § 7384 et seq, that is at issue, ". . . engaged in activities related to the production or processing of beryllium for sale to or use by the Department of Energy," 42 U.S.C. § 7384l(7)(C), is so clear and unambiguous as to be subject to de novo interpretation by the Court at Chevron step one. Second, plaintiff has also failed to demonstrate how DOL's regulatory interpretation of that language, consistent with an analogous provisions of the same statute that require a DOE remediation contract, is not a plausible interpretation. Hence, defendants' motion to dismiss for

failure to state a claim should be granted.

## ARGUMENT

1. The phrase "related to" is inherently ambiguous and hence its meaning cannot be resolved *de novo* by the Court at Chevron step 1. In several different contexts, the Supreme Court has recognized that the phrase "related to" or "relates to" undeniably has a broad and expansive meaning, fraught with ambiguity, and hence is rarely susceptible of resolution by the Court at step one of the analysis required by Chevron, supra. See e.g. Morales v. TWA, 504 U.S. 374, 383-84 (1992); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46 (1987). Plaintiff implicitly concedes this point, but responds that "there is no room for ambiguity with respect to the specific issue in this case: "whether remediation is 'related to' beryllium production or processing." Opposition at 4.

First, even assuming that "remediation" may reasonably be read into the "related to" language, it is not in the statutory phrase. Accordingly, as the Supreme Court instructed in Chevron, where Congress "has not directly addressed the precise issue," an agency may answer through reasonable regulation. Chevron supra 467 U.S. at 843.[1]

Second, while DOL agrees that remediation is related to the production and processing of beryllium, that is not the precise question presented by plaintiff's claim. Rather, the relevant question is whether remediation is related to "the production or processing of beryllium for sale

---

[1] By contrast, Congress did specifically address the issue of remediation elsewhere in the statute. In defining both the terms "Department of Energy contractor employee" and "Department of Energy facility," the statute includes the time period that a facility was undergoing environmental "remediation," pursuant to a contract with DOE. 42 U.S.C. § 7384l(11)(B)(i) and (12)(B)(ii). See pp. 7-8, infra. Thus, when Congress chose to specifically address the issue of remediation under the EEOICPA, it said "remediation."

to or use by the Department of Energy." 42 U.S.C. § 7384l(7)(c) (emphasis added). For example, the statute does not address the degree or extent to which a particular remediation project must be "related to" production or processing of beryllium for use by DOE for it to be covered by the statute. If, over the life of its beryllium production, a particular processor sold 95% of its product to private parties and only 5% to DOE, DOL could reasonably conclude that such remediation is not sufficiently "related to" use by DOE to justify coverage, while a 50/50 split might result in a different determination.[2]

    Of direct relevance, the statute is also silent on how DOL must make the "related to" determination, whether by rule, as DOL has done, or through case-by-case adjudication in each benefit application, as plaintiff insists. But well-settled administrative law principles grant deference to the agency's decision as to the choice of what procedural tools to use in effectuating its statutory mandate. As Justice Murphy recognized in SEC v. Chenery Corp., 332 U.S. 194 (1947), "the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency." Id. at 202-03. This principle has been consistently reaffirmed by the courts. See e.g. FCC v. National Citizens Comm. for Broadcasting, 436 U.S. 775, 808-09 n. 29 (1978) ("The Commission has substantial discretion as to whether to proceed by rulemaking or adjudication..."); International Union, UMW v. FMSHA, 920 F.2d 960, 964 (D.C. Cir. 1990). Thus, DOL was well within its rights in

---

    [2]Indeed, plaintiff fatally undermines his own plain language argument when he argues that he be permitted to show that the beryllium contamination remediated during his period of employment was "created, at least in part," during the course of processing or production done for DOE. Opposition at 9. Thus, plaintiff cannot set forth the statutory interpretation that he advances without resort to his own statutory interpretation of the parameters ("at least in part") under which he believes beryllium remediation should fall.

adopting a bright line test (i.e. was the remediation conducted under a contract with the Department of Energy) to determine if the remediation is sufficiently "related to" the processing for DOE.  Certainly, the EEOICPA is silent on that specific issue, and hence DOL must be permitted to address this question of the link between remediation and sale to DOE through its own, reasonable interpretation of the statute, and the reasonableness of that determination must be decided at Chevron step 2.

      2.  **DOL's regulation adopts a reasonable construction of when remediation will be "related to" the production or processing of beryllium**.  DOL agrees with the plaintiff that, in the abstract, remediation of environmental/occupational hazards that were caused by production or processing of beryllium for delivery to DOE is covered by the statute.  The critical question is precisely how to make that determination.  That ambiguity is addressed in the DOL regulation, which requires that, to be covered, remediation have been "undertaken pursuant to a contract between the [beryllium] vendor and DOE." 20 C.F.R. § 30.205(a)(2)(iii).  This requirement is neither unreasonable nor beyond the scope of DOL's statutory authority.

      Certainly, in order to determine whether the required remediation is "related to" production for DOE, the DOL (or some federal entity) must be in a position to make that determination.  Requiring that this determination be made through proof that DOE had contracted for the remediation, as 20 C.F.R. § 30.205(a)(2)(iii) requires, is one reasonable method to ensure that the federal government can reliably make that determination.  Obviously, DOE would only enter into such a remediation contract if it believed the contamination was related to the vendor's production or processing of beryllium for DOE.

      The Supreme Court's decision in Heckler v. Campbell, 461 U.S. 458 (1983) provides

ample support for the validity of the Secretary's rule.  In Heckler, the Supreme Court held that the Secretary of Health and Human Services (HHS) properly applied across-the-board medical-vocational guidelines in rendering a disability-claim determination, against a challenge, similar to the one Brigham raises here, that the claimant was entitled to an individualized evidentiary inquiry on all elements of his claim.

As the Court observed, the Secretary's decision-making responsibilities under the Social Security Act entail two steps: (1) assessing the claimant's individual abilities and (2) determining whether nation-wide suitable available employment exists for a worker with the claimant's qualifications.  Id. at 467.  The Heckler Court then provided guidance on the limits of an agency's rulemaking authority juxtaposed against those areas where it was required to render individual, case-by-case, evidentiary determinations:

> The first inquiry [the claimant's qualifications] involves a determination of historic fact, and regulations properly require the Secretary to make these findings on the basis of evidence adduced at a hearing. . ..The second inquiry requires the Secretary to determine an issue that is not unique to each claimant-the types and number of jobs that exist in the national economy.  This type of general factual issue may be resolved as fairly through rulemaking as introducing [evidence] at each disability hearing.

Id. at 467-68.

Thus, the Court held, the appropriate line between an agency's use of evidentiary decision-making and its rulemaking authority is to be drawn, respectively, with regard to those matters unique to the individual and other questions that can be decided generically in rulemaking proceedings.  Id. at 467.  The Court made the commonsense observation that "[a] contrary holding would require the agency continually to relitigate issues that may be established

fairly and efficiently in a single rulemaking proceeding." Id.  Accord, Mobil Oil Exploration & Producing Southeast, Inc. v. United Distribution Cos., 498 U.S. 211, 228, (1991) (agency may establish general facts by a rulemaking even when the enabling statute requires the agency to hold a hearing); Panhandle Eastern Pipe Line Co. v. FERC, 907 F.2d 185, 188 (D.C. Cir. 1990) ("It is far too late in the day to claim that an agency may not simplify adjudications by resolving issues in a rulemaking.").

Under the EEOICPA, the Secretary of Labor, like the Secretary of HHS in Heckler, properly renders her findings on matters of individual historic fact based on the evidence of record.  Those matters would include all that are particular or unique to the individual claimant, e.g., the worker's employment and medical history, information on toxic exposure, the nature and extent of current illness or illnesses, documentation of medical expenses and survivor eligibility. 20 C.F.R. § 30.305.  In Brigham's case, he was permitted, in particular, to present evidence of his employment with Coors Porcelain, the dates of that employment, documentation of his diagnosis of beryllium disease and his medical bills. 20 C.F.R. §§ 30.206; 30.207.

But the regulation at issue here, as in Heckler, has nothing to do with matters that are unique to Brigham.  The regulation instead concerns a matter of general application – defining the nature of remediation work that can be said, under the broad statutory rubric, to be reasonably "related to" a beryllium vendor's processing and production of beryllium on behalf of the Department of Energy that thus renders all those employed by vendors during such periods covered under the Act.  The regulation addresses not simply Brigham, but rather "a certain class of issues," id. at 467, and like the guidelines at issue in Heckler, the Secretary has promulgated the regulation here for the sake of "uniformity and efficiency" in exercising her decision making

responsibility. *Id*. at 467.

Plaintiff also argues that "as a matter of fairness and due process," claimants must be permitted, as a matter of fact, to demonstrate that "any beryllium contamination remediated by their employers during their employment was created, at least in part, during the course of processing or production done for DOE." Opposition at 9. The Heckler Court rejected a nearly identical challenge – that factual findings embodied in a rule cannot be immunized from subsequent challenge in an adjudication. The Court answered that "when the accuracy of those facts already has been tested fairly during rulemakings, the rulemaking proceeding itself provides sufficient procedural protection." Id. at 469-70. Thus, in this case, the factual predicate embodied in the Secretary's regulation – that only remediation undertaken pursuant to a contract with the Department of Energy could be said, with any assurance, to be "related to" qualifying beryllium proceeding and production work – has been previously opened to public scrutiny, comment and challenge during the rulemaking process." See 71 Fed. Reg. 22905 (April 24, 2006) (opportunity to comment on June 8, 2005 interim final rule). Plaintiff cannot now attack that factual predicate underlying the regulation in the adjudication of his claim.

Plaintiff's assertion that the regulation could be overinclusive in some cases, and underinclusive in others, Opposition at 9, is entirely beside the point. Not infrequently, there can be two interpretations of how to implement a statute, one of which might be underinclusive, the other, overinclusive. Under those circumstances, "the agency's decision as to which interpretation brings about the better allocation of resources is a policy judgment, and as such it is entitled to Chevron deference." Wagner Seed Co. v. Bush, 946 F.2d 918, 923 (D.C. Cir. 1991). And, contrary to plaintiffs' assertion, there is nothing improper about weighing concerns

7

of administrative convenience and workability in adopting a regulation. See e.g. Atlanta College v. Riley, 987 F.2d 821, 829-30 (D.C. Cir. 1993).

Second, contrary to plaintiff's argument that 20 C.F.R. § 30.205(a)(2)(iii) is beyond the scope of DOL's statutory authority, Opposition at 7, the regulatory requirement for a DOE contract is consistent with other provisions of EEOICPA. In both the definitions of "Department of Energy contractor employee," 42 U.S.C. § 7384l(11)(B)(i), and in the definition of "Department of Energy facility," 42 U.S.C. § 7384l(12)(B)(ii), a contractual relationship with DOE is the touchstone required for coverage. It is certainly not unreasonable for DOL to adopt a regulation that follows the same approach that Congress specifically utilized in related provisions of the same statute. As the D.C. Circuit has noted,

> [u]nless we find that the [agency's] rule contravenes the unambiguously conveyed intent of Congress as to this precise issue, we will reject the petitioner's challenge so long as the regulation appears designed to implement the statutory scheme by reasonable means.

American Paper Institute, Inc. v. U.S.E.P.A., 996 F.2d 346, 351 (D.C. Cir. 1993).

Additionally, DOL's adoption of the DOE contractual requirement is supported by the principle that "a provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." Bailey v. United States, 515 U.S. 137, 146 (1995) (quoting United Savings Ass'n v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371 (1988)). Hence, DOL's regulation properly relied, in part, on other provision of EEOICPA, which required the existence of a DOE contract, and the associated oversight of any remediation project, to make the regulatory determination as to when the remediation is "related to" production of beryllium for sale to DOE.

Plaintiff's final argument, that the DOL "regulation also fails because it would, in fact, render portions of the statute superfluous," Opposition at 10, is based on a fundamental misreading of the relevant provisions of the EEOICPA. Plaintiff contends that if his employer, Coors Porcelain, "conducted environmental remediation under contract with DOE, subsection 7384l(7)(B) would provide coverage for him independently of subsection 7384l(7)(C) at issue in this case." Opposition at 10. From there, plaintiff argues that DOL's "regulatory gloss on subsection 7384l(7)(C) makes no sense because employees benefitting from it would already be covered by subsection (B)," Opposition at 11, and obviously a construction of one clause in a statute that renders another provision meaningless should be rejected. Id. A careful reading demonstrates that the regulation does not make the statutory provision superfluous.

Subsection 7384l(7)(C) applies to Mr. Brigham, because he was an "employee of a beryllium vendor," i.e. Coors Porcelain, who produced beryllium for DOE. Subsection 7384l(7)(B) applies to "[a] current or former employee of — (i) <u>any entity that contracted with the Department of Energy to provide</u> management and operation, management and integration, or <u>environmental remediation</u> of a Department of Energy facility . . ." (emphasis added). It is undisputed that Morrison-Knudsen Engineers, not Coors Porcelain, contracted to perform the actual environmental remediation through which plaintiff was allegedly injured. Thus, if plaintiff had been employed by Morrison Knudsen, and if it had performed its remediation work at a DOE facility through a contract with DOE, plaintiff would be entitled to compensation under subsection 7384l(7)(B). As neither is the case, he is not. And, more importantly, as DOL's regulatory gloss on subsection 7384l(7)(C) does not render subsection 7384l(7)(B) superfluous, there is no basis to question its overall reasonableness.

## CONCLUSION

Wherefore, for the reasons set forth herein as well as in defendants' Motion to Dismiss, plaintiff's claim should be dismissed for failure to state a claim.

DATED: September 27, 2006                    Respectfully submitted,

                                              PETER D. KEISLER
                                              Assistant Attorney General
                                              KENNETH L. WAINSTEIN
                                              United States Attorney

OF COUNSEL:                    /s/ Daniel Bensing

                                              RICHARD G. LEPLEY
STEPHEN SILBIGER                    DANIEL E. BENSING (D.C. Bar No. 334268)
Office of the Solicitor                    Attorneys, U.S. Department of Justice
Department of Labor                    Civil Division, Federal Programs Branch
                                              20 Massachusetts Ave., N.W., Room 6114
                                              Washington, D.C. 20001
                                              Telephone: (202) 305-0693
                                              Facsimile: (202) 616-8460

<u>Certificate of Service</u>

      I hereby certify that on this 27th day of September, 2006, I caused to be served by mail a copy of Defendants' Reply Memorandum in Support of Motion to Dismiss, upon the following counsel for plaintiffs:

>Brian Wolfman
>Public Citizen Litigation Group
>1600 20th St., N.W.
>Washington, D.C. 20009

      /s/ _____
      DANIEL BENSING