## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES DOUGLAS BRIGHAM,          :
                                :
       Plaintiff,           :
                                :
   v.                          :   Civil Action No. 06-0958 (JR)
                                :
OFFICE OF WORKERS COMPENSATION  :
PROGRAMS, *et al.*,             :
                                :
       Defendants.          :

### MEMORANDUM ORDER

James Brigham challenges a final decision by the Office of Workers' Compensation Programs (OWCP), a branch within the Department of Labor (DOL), which denied him benefits under the Energy Employees Occupational Illness Compensation Program Act of 2000 (EEOICPA), 42 U.S.C. § 7384. Pending before the court is the government's motion to dismiss, which asserts that Brigham's claim is barred by a DOL regulation, and that this regulation is a "permissible" agency interpretation of the EEOICPA to which I must defer.

### BACKGROUND

The EEOICPA establishes a compensation program for workers who have suffered illnesses caused by their exposure to radiation, beryllium, or silica while working at Department of Energy (DOE) facilities, or at the facilities of certain DOE contractors, subcontractors, and designated beryllium vendors. The program provides qualified workers with a uniform lump-sum payment of $150,000 and medical benefits for care associated with

the illness. 42 U.S.C. § 7384s(a-b).  Of central relevance to this case, "covered beryllium employee" is a defined term that includes any "current or former employee of a beryllium vendor...during a period when the vendor was engaged in activities related to the production or processing of beryllium for sale to, or use by, the Department of Energy."  42 U.S.C. § 7384l(7)(c).

Brigham is a former employee of the Coors Porcelain facility in Golden, Colorado.  That facility produced beryllium under contract with the Atomic Energy Commission, a predecessor agency of the Department of Energy,[1] from 1947 to 1975.  Had Brighman worked at that facility at any time during that period, the parties agree that he would be a "covered beryllium employee" entitled to compensation under the Act.  Brigham's tenure at Coors Porcelain, however, was from 1983 to 1995, after its beryllium production contract with DOE had ended.  In 1985, while Brigham was employed there, Coors Porcelain conducted environmental remediation to clean up residual beryllium from its production efforts.  The Department of Energy was not a party to this remediation contract.[2]  Brigham subsequently was diagnosed

---

[1]The EEOCIPA defines the term "Department of Energy" to include its "predecessor agencies."  42 U.S.C. § 8384l(10).

[2]In a September 28, 2005 "Findings of Fact," the OWCP district office in Denver found that the remediation was conducted pursuant to a contract between Coors Porcelain and Morrison-Knudsen Engineers and did not involve the Department of

with chronic beryllium disease, a compensable illness under the
Act.  42 U.S.C. § 7374l(8)(B).  He alleges, and defendant
concedes for purposes of this motion, that his illness could only
have been caused by his presence at the Coors Porcelain facility
while the remediation work was being done.

        In order to receive benefits under the EEOICPA program,
an individual must file a claim with the OWCP.  20 C.F.R.
§§ 30.100.  An OWCP district office reviews the factual and
medical record and issues a recommended decision containing
findings of fact and conclusions of law.  20 C.F.R. §§ 30.300,
30.305, 30.306.  It then forwards the claim to the OWCP's Final
Adjudication Branch (FAB).  20 C.F.R. § 30.307(b).

        The claimant has sixty days following the recommended
decision to object to its findings and request that the FAB
conduct either a hearing or a review of the written record.  20
C.F.R. §§ 30.310(a), 30.312.  Following a review of the written
record, any additional submissions by the claimant and, in some
cases, its own investigation, see 20 C.F.R. §§ 30.313(a),
30.314(a), the FAB may either return the claim to the district
office for further development or issue a decision.  20 C.F.R.
§§ 30.316, 30.317.  That decision becomes final unless the
claimant requests reconsideration within thirty days.  20 C.F.R.

_____

Energy.  Plaintiff conceded this point during the processing of
his administrative claim and does not challenge it here.

§§ 30.316(d) and 30.319(a).  If the FAB accepts such a request, it reconsiders the written record and issues a new final decision.  20 C.F.R. § 30.319(c).  If the FAB rejects the request, its decision is considered "final" as of the date reconsideration is denied.  20 C.F.R. § 30.319(c).

Brigham filed a claim for EEOICPA benefits with the OWCP's Denver district office on February 19, 2002.  On September 12, 2002, the district office issued a recommended decision to deny Brigham's claim on the grounds that he was not a "covered beryllium employee" as defined by the Act, because his employment at the Coors Porcelain facility took place outside the period during which the facility had a contract with DOE.  On February 20, 2003, the FAB issued a final decision denying his claim on the same grounds.  Brigham's request for reconsideration was denied.

On February 15, 2005, Brigham filed a civil suit in this court, Civ. No. 05-0325 (JR), appealing the final decision on his claim.  On April 8, 2005, the director of OWCP vacated the FAB's decision, reopened Brigham's claim, and directed the Denver district office to decide whether Brigham was a "covered beryllium employee" because he worked at Coors Porcelain during a period of environmental remediation.  Brigham then voluntarily dismissed his lawsuit as moot.

While his reopened administrative claim was pending, the Department of Labor promulgated a new regulation regarding eligibility for benefits under the EEOICPA.   See 20 C.F.R. § 30.205 ("What are the criteria for eligibility for benefits relating to beryllium illnesses covered under Part B of EEOICPA.").   The regulation is an almost word-for-word recitation to the statute, save for one exception of direct relevance to Brigham.   Under its definition of "covered beryllium employee," the regulation provides for the eligibility of:

> [A] current or former civilian employee of...(iii) A beryllium vendor, or of a contractor or subcontractor of a beryllium vendor, during a period when the vendor was engaged in activities related to the production or processing of beryllium for sale to, or use by, the DOE, including periods during which environmental remediation of a vendor's facility was undertaken pursuant to a contract between the vendor and DOE.

20 C.F.R. § 30.205(a)(2)(iii)(emphasis added).

Relying on that regulation, on September 28, 2005, the district office issued a new recommended decision reaching the same result as the first one – that Brigham was not a "covered beryllium employee," because he was neither employed at Coors Porcelain during the time period when the facility was producing or processing beryllium for the DOE, nor employed there during periods of environmental remediation "undertaken pursuant to a contract between the vendor and DOE."   Although Brigham objected to this recommendation, on April 26, 2006, the FAB denied his

claim, citing the regulation.  Brigham subsequently initiated
this civil action.

**ANALYSIS**

Brigham submits that he is a "covered beryllium
employee" under the EEOICPA, and therefore that the OWCP's denial
of his benefits claim was "arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with law."  5 U.S.C.
§ 706(2)(A).  The government's motion to dismiss argues that
Brigham has failed to state a claim upon which relief can be
granted, Fed. R. Civ. P. 12(b)(6), because his claim is barred by
the DOL regulation.  Brigham responds that the regulation is an
unreasonable interpretation of the EEOICPA that must be rejected.
Pl.'s Opp. at 2.  Two questions are thus presented: (1) whether
the regulation bars Brigham's claim, and (2) if so, whether the
regulation is a reasonable interpretation of the statute,
entitled to judicial deference under <u>Chevron, U.S.A., Inc. v.
Natural Resources Defense Council</u>, 467 U.S. 837 (1984).

**(1) The regulation does not bar Brigham's claim.**

Plaintiff appears to concede the government's argument
that the regulation would bar his claim if it were valid,
preferring to move to the validity question – but both sides have
mis-read the regulation.  Its inclusion of the phrase "including
periods during which environmental remediation of a vendor's
facility was undertaken pursuant to a contract between the vendor

and DOE." 20 C.F.R. § 30.205(a)(2)(iii), may not be read as
reducing the coverage of the statute.[3] The statute provides
coverage for activities "related to the production or processing
of beryllium for sale to, or use by, the DOE." All the
regulation does is make clear that one such activity is
"environmental remediation of a vendor's facility...undertaken
pursuant to a contract between the vendor and DOE." It does not
exclude other activities that may be related to beryllium
production or processing.

---

[3]Were I to accept defendants' interpretation of the
regulation, it would render portions of the statute superfluous.
See Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 489
n. 13 (2004) ("It is...a cardinal principle of statutory
construction that a statute ought, upon the whole, be so
construed that...no clause, sentence, or word shall be
superfluous, void, or insignificant."). As plaintiff rightly
points out, employees of a beryllium vendor that conducted
environmental remediation at its facility under contract with the
DOE are already entitled to coverage under the EEOICPA. Had
Coors Porcelain conducted remediation at its facility pursuant to
a DOE contract, the remediated structure would be a "Department
of Energy facility" - defined by the statute as a "building...(B)
with regard to which the Department of Energy has or had...(ii)
entered into a contract with an entity to provide...environmental
remediation services." 42 U.S.C. § 7384l(12). Accordingly, an
employee who worked at that facility would qualify for benefits
under subsection 7384l(7)(B), which extends coverage to any
"current or former employee of...(I) any entity that contracted
with the Department of Energy to provide...environmental
remediation of a Department of Energy facility." 42 U.S.C.
§ 7384l(7)(B).

**(2) A further record is needed to determine whether the agency's interpretation of the statute is entitled to judicial deference.**

Properly read (as in the previous section of this memorandum), the regulation appears to be a reasonable interpretation of the statute.  The agency's interpretation of its own regulation as it applies to Brigham's case, however, raises a <u>Chevron</u> question as to the agency's interpretation of a statute it is charged with enforcing.  At the first <u>Chevron</u> step, the court must determine whether Congress has directly spoken to the issue in question or whether, with respect to that issue, the statute is silent or ambiguous.  If the former, the court must give effect to Congress' intent.  If the latter, the court moves to the second step and determines "whether the agency's answer is based on a permissible construction of the statute," 467 U.S. at 843, bearing in mind that the court should not "impose its own construction."  <u>Id.</u>[4]

The question is whether beryllium remediation is an "activit[y] <u>related to</u> the production or processing of beryllium

---

[4]Defendants call for a more stringent standard, contending that the "agency's view is deemed to be reasonable so long as it is not 'flatly contradicted' by plain language."  Defs.' Mot. at 10.  For this proposition, defendants cite the Supreme Court's decision in <u>Department of the Treasury v. Federal Labor Relations Authority</u>, 494 U.S. 922, 928 (1990).  But defendants' interpretation of that decision goes too far.  Although the Supreme Court indeed struck down an agency interpretation that was "flatly contradicted" by the plain language of the statute, no where in the opinion does the Court <u>require</u> such blatant agency misconstruction.

for sale to, or use by, the DOE."  42 U.S.C.

§ 7384l(7)(c)(emphasis added).  The intuitive answer is yes – if

remediation is a necessary follow-up to beryllium processing.

The government correctly points out, however, that the "related

to" language of the statute is modified - and limited - by the

phrase "for sale to, or use by, the DOE."  It offers a

hypothetical in which a beryllium processor sold 95% of its

product to private parties and only 5% to DOE.  In such a case,

the government submits, the DOL could reasonably conclude that

remediation was not sufficiently "related to" processing for the

DOE to justify coverage.

        The government concedes that "a 50/50 split might

result in a different determination."  That conclusion undercuts

the DOL's interpretation of the statute: if a beryllium processor

sold 95% of its product to the DOE, but did not contract with the

government for remediation, would it be reasonable for the agency

to determine that the remediation did not "relate to" production

for the DOE?  Is it reasonable within the meaning of the <u>Chevron</u>

rule, in other words, for the agency to decide whether or not

beryllium remediation is "related to" production or processing

for the DOE solely on the basis of the existence *vel non* of a

contract with the DOE?

        The parties have not provided enough information to

answer that question on the present record – and neither party

has moved for summary judgment anyway.  If remediation is a necessary concomitant of beryllium production or processing, no matter the amount, a summary judgment motion from the plaintiff would be expected.  If the remediation is only required for certain amounts of beryllium produced or processed, then it would be useful to know how much was produced or processed at Coors Porcelain, and what percentage of that amount was done "for sale to, or use by, the Department of Energy."

* * * * *

The motion to dismiss [#4] is **denied**.  The parties are directed to meet and confer and, within 30 days of the date of this order, to submit a joint proposed schedule for further proceedings.  If they are unable to do so, the Clerk will set a status conference.


JAMES ROBERTSON
United States District Judge